Melissa A. Fortunato (# 319767)
**BRAGAR EAGEL & SQUIRE**
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Email: fortunato@bespc.com

*Counsel for Plaintiff*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| TIM BERCIO,<br>Plaintiff,<br><br>v.<br>FINJAN HOLDINGS, INC., DANIEL CHINN, ERIC BENHAMOU, GLENN DANIEL, JOHN GREENE, HARRY KELLOGG, GARY MOORE, ALEX ROGERS, and MICHAEL SOUTHWORTH,<br><br>Defendants. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>::<br>: | Case No. 3:20-cv-04763<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>JURY TRIAL DEMANDED |

Plaintiff Tim Bercio ("Plaintiff"), by and through his undersigned counsel, for his complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

**NATURE OF THE ACTION**

1. Plaintiff brings this action against Finjan, Inc. ("Finjan" or the "Company") and the members of its Board of Directors (the "Board" or the "Individual Defendants") for their violations of Sections 14(e) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act"), 15 U.S.C.

§§ 78n(e), 78t(a), and to enjoin the expiration of a tender offer (the "Offer") by affiliates of Fortress Investment Group, LLC ("Fortress"), CFIP Goldfish Merger Sub, Inc. ("Merger Sub") and CFIP Goldfish Holdings, LLC ("Parent"), (the "Proposed Transaction").

2. On June 10, 2020, Finjan announced that it had entered into an Agreement and Plan of Merger with Fortress (the "Merger Agreement"), pursuant to which Fortress will acquire all outstanding shares of Finjan common stock for $1.55 per share in cash. The Offer is scheduled to expire at 12:00 midnight, New York City time, at the end of July 22, 2020.

3. On June 24, 2020, in order to convince Finjan's common stockholders to tender their shares in the Offer, defendants filed a Schedule 14D-9 Solicitation/Recommendation Statement (the "14D-9") with the SEC, which omits or misrepresents material information concerning, among other things: (i) Finjan management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by the Company's financial advisor, Atlas Technology Group, LLC ("Atlas"); (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest. The failure to adequately disclose such material information renders the 14D-9 false and misleading.

4. For these reasons, and as set forth in detail herein, Plaintiff alleges that defendants violated Sections 14(e) and 20(a) of the Exchange Act as Finjan's stockholders need such information in order to make a fully informed decision whether to tender their shares in support of the Proposed Transaction or seek appraisal.

## JURISDICTION AND VENUE

5. This Court has jurisdiction over the claims asserted herein for violations of Sections 14(e) and 20(a) of the Exchange Act pursuant to Section 27 of the Exchange Act, 15 U.S.C. § 78aa, and 28 U.S.C. § 1331 (federal question jurisdiction).

6. This Court has jurisdiction over the defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff's claims arose in this District, where a substantial portion of the actionable conduct took place, where most of the documents are electronically stored, and where the evidence exists. Finjan is incorporated in Delaware and is headquartered in this District. Moreover, each of the Individual Defendants, as Company officers or directors, either resides in this District or has extensive contacts within this District.

**PARTIES**

8. Plaintiff is, and has been at all times relevant hereto, a continuous stockholder of Finjan.

9. Defendant Finjan is a Delaware corporation with its principal executive offices located at 2000 University Avenue, Suite 600, East Palo Alto, California 94303. Finjan's common stock is traded on the NASDAQ Capital Market under the ticker symbol "FNJN."

10. Defendant Daniel Chinn is Chairman of the Board and has served as a director of the Company since June 2013.

11. Defendant Eric Benhamou has served as a director of the Company since June 2013.

12. Defendant Glenn Daniel has served as a director of the Company since April 2014.

13. Defendant John Greene has served as a director of the Company since June 2018.

14. Defendant Harry Kellogg has served as a director of the Company since April 2014.

15. Defendant Gary Moore has served as a director of the Company since November 2015.

16. Defendant Alex Rogers has served as a director of the Company since June 2013.

17. Defendant Michael Southworth has served as a director of the Company since April 2014.

18. Defendants identified in paragraphs 10 to 17 are collectively referred to herein as the "Board" or the "Individual Defendants."

19. Relevant non-party Fortress was founded in 1998 and is a leading, highly diversified global investment manager. As of March 31, 2020, Fortress had $41.7 billion of assets under

management, over 850 asset management employees, and approximately 200 investment professionals. Fortress is headquartered in New York.

## SUBSTANTIVE ALLEGATIONS

### Background of the Company and Proposed Transaction

20. Finjan is a leader in cybersecurity with a focus on three main areas: intellectual property licensing and enforcement, mobile security application development, and investing in cybersecurity technologies and intellectual property. Licensing and enforcement of the Company's cybersecurity patent portfolio is operated by Finjan's wholly owned subsidiaries, Finjan, Inc. and Finjan Blue, Inc. ("Finjan Blue"). The Company's mobile security business is operated through its wholly owned subsidiary Finjan Mobile, Inc. ("Finjan Mobile").

21. Since Finjan, Inc. became a wholly owned subsidiary of the Company in June 2013, the Company has commenced preliminary discussions with numerous potential licensees and has filed a number of patent infringement lawsuits.

22. During the years ended December 31, 2019, 2018, and 2017, Finjan generated revenue from its cybersecurity business of approximately $13.2 million, $82.3 million, and $50.5 million, respectively.

23. On May 13, 2020, Finjan announced its first quarter 2020 financial results and key highlights. For the quarter, the Company reported revenue of $3.8 million compared to no revenue for the first quarter of 2019. The Company's net loss for the first quarter of 2020 was $4.2 million, or ($0.15) per share, compared to net loss of $6.0 million or ($0.22) per share for the first quarter of 2019. Finjan ended the quarter with approximately $32.0 million in cash.

24. On June 10, 2020, Finjan issued a press release announcing the Proposed Transaction which states, in relevant part:

> EAST PALO ALTO, Calif., June 10, 2020 -- Finjan Holdings, Inc. (NASDAQ: FNJN) (Finjan) today announced that it has entered into a definitive agreement (the "Merger Agreement") pursuant to which affiliates of Fortress Investment Group LLC (collectively "Fortress") would acquire all outstanding shares of Finjan common stock for $1.55 per share in cash (the "Transaction"), representing an aggregate equity value of approximately $43.9 million. Finjan, a recognized pioneer in the development of cybersecurity technologies, will maintain its brand and business model post-

transaction, licensing and enforcing a substantial patent portfolio that has been consistently upheld by courts and patent offices.

Under the terms of the Merger Agreement, Fortress will commence a tender offer to purchase all the outstanding shares of Finjan's common stock for $1.55 per share in cash. The closing of the tender offer is subject to customary conditions, including the tender of a majority of the outstanding shares of Finjan's common stock. Following successful completion of the tender offer, Fortress will acquire all remaining shares not tendered in the offer through a merger at the same price as in the tender offer.

Finjan's Board of Directors unanimously approved the Merger Agreement and recommends that shareholders tender their shares. In connection with the Merger Agreement, directors and officers of the Company, together with shareholders, in the aggregate holding approximately 28 percent of the outstanding shares of common stock of the Company, have agreed to tender their shares in the offer pursuant to support agreements.

The Transaction is not subject to any financing condition and is expected to close in the third quarter of 2020.

Daniel Chinn, Chairman of Finjan Holdings, stated, "The Board of Directors thoroughly evaluated all of our strategic options, giving careful consideration to the current unprecedented and uncertain environment, and we believe that this transaction will provide the best outcome for Finjan and its stockholders. We appreciate the continued patience of our investors and employees and thank them for their support. We recommend all shareholders to tender their shares in the offer."

Phil Hartstein, President and Chief Executive Officer of Finjan, commented, "We believe that this transaction strengthens our ability to continue executing our business model, particularly while facing unpredictable timelines in the court system and a challenging macro-economic environment. The acquisition enables Finjan to continue to pursue our licensing mission and expand our reputation and credibility on policy related initiatives, while providing us greater resources and opportunities as a Fortress portfolio company."

Eran Zur, Managing Director and head of the Fortress IP Finance Group, commented, "Finjan pioneered many of the technologies that underpin how companies protect their networks from cyberattacks. Finjan had the foresight to patent its innovations and its patent portfolio has been repeatedly upheld by courts and patent offices while being widely licensed to industry players. Fortress and Finjan share a strong belief in the importance of preserving a patent system that allows innovators to earn a fair return on their investment and we look forward to supporting Finjan as it moves forward with its licensing program."

**<u>The 14D-9 Misleads Finjan Stockholders by Omitting Material Information</u>**

28. On June 24, 2020, defendants filed the materially misleading and incomplete 14D-9 with the SEC. Designed to convince the Company's stockholders to tender their shares in the Offer, the 14D-9 is rendered misleading by the omission of critical information concerning: (i) Finjan management's financial projections and the data and inputs underlying the financial valuation analyses that support the fairness opinion provided by Atlas; (ii) the background of the Proposed Transaction; and (iii) Company insiders' potential conflicts of interest.

***Material Omissions Concerning the Financial Projections and Atlas's Financial Analyses***

29. The 14D-9 omits material information regarding Company management's financial projections relied upon by Atlas for its analyses.

30. The 14D-9 sets forth:

> In connection with its strategic planning process and its evaluation of certain strategic alternatives, the Merger and the other Transactions, however, the Company's management prepared certain financial projections regarding the Company's anticipated future operations as a standalone company. The most recent of these forecasts were certain financial projections for the remainder of fiscal year ending December 31, 2020, which were made as of April 25, 2020 (the "*April Projections*") and updated as of May 27, 2020 (the "*May Projections*", and together with the April Projections, the "*Management Projections*"). The Management Projections were provided to the Board, Atlas and Fortress. The May Projections were also provided to Atlas for its use in connection with rendering its opinion to the Board and performing its financial analyses. The Management Projections, at the time they were made, represented the best available estimates and good faith judgments of the Company's management as to the Company's future financial performance.

14D-9 at 37. Yet, the 14D-9 fails to set forth Company management's basis for updating the April Projections on May 27, 2020, as well as a description or quantification of the revisions made.

31. In connection with Atlas's *Discounted Cash Flow Analysis* ("DCF"), "Atlas used Company Projections for the unlevered cash flows for the remainder of the year ending December 31, 2020." *Id.* at 32. Yet, the 14D-9 fails to disclose the Company's unlevered cash flows for the remainder of the year ending December 31, 2020 for each of the "April Projections" and "May Projections."

32. The 14D-9 describes Atlas's fairness opinion and the various valuation analyses performed in support of its opinion. However, the description of Atlas's fairness opinion and analyses fails to include key inputs and assumptions underlying these analyses. Without this information, as described below, Finjan's public stockholders are unable to fully understand these analyses and, thus, are unable to determine what weight, if any, to place on Atlas's fairness opinion in determining whether to tender their shares in the Proposed Transaction or seek appraisal.

33. With respect to Atlas's DCF, the 14D-9 fails to disclose: (i) the unlevered free cash flows for the Company for the remainder of calendar year 2020 and for calendar years 2021 through 2024 that form the basis of the analysis; (ii) the range of discount rates utilized by Atlas to derive the implied per share range of $1.27 to $1.68 and quantification of the inputs used to derive the range of discount rates; and (iii) the range of illustrative enterprise values Atlas derived for the Company.

34. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Certain Unaudited Prospective Financial Information of the Company" and "Opinion of the Company's Financial Advisor."

***Material Omissions Concerning the Background of the Proposed Transaction***

35. The 14D-9 fails to disclose material information concerning the background of the Proposed Transaction.

36. The 14D-9 sets forth that in May 2019, "Atlas contacted seven parties, including Party A, Party B, Party C, Party D and Fortress." *Id.* at 17. The 14D-9 then sets forth that "[o]n November 14, 2019, the Company and Party B entered into an amendment to their confidentiality agreement restricting Party B from acquiring more than 6% of the Company's outstanding shares without Board approval prior to March 30, 2020. . . ." *Id.* at 20. The 14D-9 fails to disclose whether the confidentiality agreement Finjan entered into with Party B includes a "don't-ask-don't-waive" ("DADW") standstill provision and whether Finjan entered into any confidentiality agreements with any of the other bidders Atlas contacted that include DADW provisions that prevent any of those potentially interested bidders from submitting a topping offer for the Company.

37. The disclosure of the terms of confidentiality agreements is crucial to Finjan stockholders being fully informed of whether their fiduciaries have put in place restrictive devices to foreclose a topping bid for the Company.

38. The 14D-9 also fails to disclose the specific details contained in Party B's February 3, 2020 letter, indicating that Party B wished to deal directly with the Board and not the Transaction Committee regarding a potential transaction with the Company.

39. Moreover, the 14D-9 fails to disclose the results of Company management's liquidation value analysis requested by the Board on April 5, 2020 and shared with the Transaction Committee.

40. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following section of the 14D-9: "Background of the Offer."

***Material Omissions Concerning Company Insiders' Potential Conflicts of Interest***

41. The 14D-9 fails to disclose material information concerning the potential conflicts of interest faced by the Company's insiders.

42. The 14D-9 fails to disclose whether any of Finjan's executive officers or directors has secured employment with the Company upon completion of the Proposed Transaction. Further, the 14D-9 fails to set forth the details of all employment and retention-related discussions and negotiations that occurred between Fortress and Finjan executive officers and directors, including who participated in all such communications, when they occurred and their content. The 14D-9 also fails to disclose whether any of Fortress's proposals or indications of interest mentioned management retention.

43. Communications regarding post-transaction employment and merger-related benefits during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Finjan's stockholders to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

44. The omission of this information renders certain portions of the 14D-9 materially misleading, including, inter alia, the following sections of the 14D-9: "Arrangements between the Company and its Executive Officers, Directors and Affiliates," and "Background of the Offer."

45. Accordingly, Plaintiff seeks injunctive and other equitable relief to prevent the irreparable injury that Company stockholders will continue to suffer absent judicial intervention.

## CLAIMS FOR RELIEF

### COUNT I
### Claims Against All Defendants for Violations of Section 14(e) of the Exchange Act

46. Plaintiff repeats all previous allegations as if set forth in full.

47. Defendants violated Section 14(e) of the Exchange Act by issuing the 14D-9 in which they made untrue statements of material facts or failed to state all material facts necessary in order to make the statements made, in light of the circumstances under which they are made, not misleading, or engaged in deceptive or manipulative acts or practices, in connection with the Offer commenced in conjunction with the Proposed Transaction.

48. Defendants knew that Plaintiff would rely upon their statements in the 14D-9 in determining whether to tender his shares pursuant to the Offer commenced in conjunction with the Proposed Transaction.

49. As a direct and proximate result of these defendants' unlawful course of conduct in violation of Section 14(e) of the Exchange Act, absent injunctive relief from the Court, Plaintiff has sustained and will continue to sustain irreparable injury by being denied the opportunity to make an informed decision in deciding whether or not to tender his shares.

### COUNT II
### Claims Against the Individual Defendants for Violation of Section 20(a) of the Exchange Act

50. Plaintiff repeats all previous allegations as if set forth in full.

51. The Individual Defendants acted as controlling persons of Finjan within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers or

directors of Finjan and participation in or awareness of the Company's operations or intimate knowledge of the false statements contained in the 14D-9 filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading.

52. Each of the Individual Defendants was provided with or had unlimited access to copies of the 14D-9 and other statements alleged by Plaintiff to be misleading prior to or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

53. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same. The 14D-9 at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were, thus, directly involved in the making of this document.

54. In addition, as the 14D-9 sets forth at length, and as described herein, the Individual Defendants were each involved in negotiating, reviewing, and approving the Proposed Transaction. The 14D-9 purports to describe the various issues and information that they reviewed and considered — descriptions which had input from the Individual Defendants.

55. By virtue of the foregoing, the Individual Defendants have violated section 20(a) of the Exchange Act.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment and preliminary and permanent relief, including injunctive relief, in his favor on behalf of Finjan, and against defendants, as follows:

A. Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages to Plaintiff;

C. Directing the Individual Defendants to disseminate a 14D-9 that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all claims and issues so triable.

Dated: July 16, 2020

**BRAGAR EAGEL & SQUIRE, P.C.**

By: */s/ Melissa A. Fortunato*

Melissa A. Fortunato (#319767)
580 California Street, Suite 1200
San Francisco, California 94104
Telephone: (415) 568-2124
Email: fortunato@bespc.com

*Counsel for Plaintiff*